## WATKINS and another vs. BLATSCHINSKI.

*Homestead Exemption.    Garnishment.*

Moneys due a judgment debtor from the purchaser of his homestead, as a part of the consideration therefor, and which the debtor designs in good faith to apply to the purchase of another homestead, are not liable to garnishment, under our statutes.

APPEAL from the Circuit Court for *Milwaukee* County.

In proceedings supplementary to execution against the defendant, a court commissioner made an order directing one Joseph Klaat to pay over to plaintiff's attorney a sum of money to be applied in satisfaction of the judgment. The order recited that no one had appeared to oppose the same, and that it appeared, from evidence taken, that Klaat was indebted to defendant in the sum ordered to be paid. Defend-

ant moved the circuit court to vacate such order, upon the record of the commissioner's proceedings, and his own affidavit. The latter stated, in substance, that at the examination before the commissioner, defendant disclosed that Klaat owed him a balance on a sale of defendant's homestead; and that subsequently to such examination, plaintiff's attorney caused Klaat to be examined without notifying defendant; that the money in the hands of said Klaat belonging to defendant were the proceeds of the sale of his homestead; and that he intended to use it for the purpose of buying another homestead.

The court vacated the commissioner's order; and the plaintiff appealed.

The cause was submitted on briefs.

*Sam. M. Dixon*, for appellant:

1. Moneys arising from the *voluntary* sale of a homestead are not exempt from execution. This court, in *Hoyt v. Howe*, 3 Wis., 752, passed upon all the provisions of our statute, except the act of 1858; and that act is so plain as to need no construction. The effect of the statute of 1858 is to place the homestead law of Wisconsin upon the same footing by legislation, as obtains in many other states by adjudication under laws substantially like our exemption law prior to 1858. *Allen v. Cook*, 26 Barb., 374; *Smith v. Brackett*, 36 id., 571; *Folsom v. Carle*, 5 Minn., 333; *Green v. Marks*, 25 Ill., 221; *Conklin v. Foster*, 57 id., 104; *McDonald v. Crandall*, 43 id., 231; *Lamb v. Shays*, 14 Iowa, 567; *Monroe v. May*, 9 Kan., 475; *Morris v. Ward*, 5 id., 239; *Bowman v. Norton*, 16 Cal., 213; *Williams v. Young*, 17 id., 403; *Dunn v. Tozer*, 10 id., 167; *Dorsey v. McFarland*, 7 id., 342; *Anthony v. Wade*, 1 Bush, 110; *Lishy v. Perry*, 6 id., 515; *Wood v. Chambers*, 20 Texas, 247; *Martel v. Somers*, 26 id., 551; *Sampson v. Williamson*, 6 id., 109; *Stewart v. Mackey*, 16 id., 56. 2. The cases are uniform in holding that an exemption of personal property does not extend to the proceeds of a

voluntary sale. *Edson v. Trask*, 22 Vt., 18; *Scott v. Bingham*, 27 id., 561; *Wooster v. Page*, 54 N. H., 125.

*M. N. Lando*, for respondent:

1. The court below construed the statute in the sense in which the legislature enacted it, and in accordance with the decisions that statutes relating to exemptions must receive a liberal construction. Ch. 137, Laws of 1858; *Gilman v. Williams*, 7 Wis., 329; *Connaughton v. Sands*, 32 id., 387; *Kuntz v. Kinney*, 33 id., 510; *Heath v. Keyes*, 35 id., 668; *Bevan v. Hayden*, 13 Iowa, 122; *Good v. Fogg*, 61 Ill., 449; *Weisbrod v. Daenicke*, 36 Wis., 73; *Sargent v. Chubbuck*, 19 Iowa, 37; 2 Tay. Stats., 1171, §§ 4, 5.   2. The statute of 1858 was evidently enacted to obviate the decision in *Hoyt v. Howe*, 3 Wis., 752. And any other construction than that given by the court below would render it worthless.   3. The commissioner had no authority to issue the order in question. Such authority can only be based upon sec. 94, ch. 134, R. S.; and in *Bank v. Pugsley*, 47 N. Y., 368, it was decided that the word property in a similar statute does not apply to debts, but is limited to specific goods. If the order should apply to debts, the authority of the commissioner would extend to imprisonment for debt.

COLE, J.   It satisfactorily appears from the disclosures made in the garnishee proceeding, that the money in the hands of the garnishee, Klaat, was a part of the consideration money of the homestead which he had purchased of the judgment debtor; and the judgment debtor states in his affidavit that he intended to use this money for the purpose of buying another homestead; and this fact is not controverted. The question presented therefore is, whether the proceeds of the homestead, which in good faith are intended by the debtor to be used and applied in the purchase of another homestead, can be garnished, while, as it were, in transition from one homestead to another? The counsel for the appellants claims that the moneys arising from the

voluntary sale of the homestead are not exempt, but may be reached by a garnishee process. The precise question has never been passed upon by this court, though the tendency of the decisions, so far as they bear upon it, is in favor of the exemption under such conditions. But the point is now fairly presented on the record, and will be decided. At the outset of the discussion, this important fact must be borne in mind, namely, that the laws of this state not only exempt the homestead from forced sale while it is occupied by the debtor and family, but they clearly and distinctly provide that the owner may remove from the homestead; may sell and convey the same to a purchaser; and that such removal or sale and conveyance shall not operate to render the homestead liable to forced sale on execution or other final process issued upon any judgment or decree against the owner. Secs. 23 and 30, ch. 134, R. S. The statute further provides that no judgment or decree against the owner shall be a lien upon the homestead for any purpose whatever, except in certain specified cases, which need not be noticed. The policy of the statute cannot be misapprehended. Its obvious design and plain purpose is, to benefit the debtor by securing to him his homestead beyond all liability to forced sale on execution or other process. In case the debtor desires to remove from the homestead for some temporary cause, or to absent himself for a time, the statute permits him to do so (*Jarvais v. Moe*, 38 Wis., 440); and the statute further enables him to sell and convey the homestead to a purchaser, free from all liens by judgment. It is obvious that this legislation is in the interest of the owner of the homestead, and was intended to confer valuable rights. It is not legislation for the benefit of creditors. Now, is it not plain that the right to sell and convey the homestead free from judgment liens is a barren right, so far as the owner is concerned, if the proceeds of the sale cannot be protected until they reach the hands of the vendor, or while in transition from one homestead sold to another purchased? It certainly

seems to us to be a valueless right, if the proceeds of the sale are liable to be attached, or. are subject to garnishee process, as soon as the homestead is sold. And we hardly think the legislature would have been to the trouble of enacting that the homestead might be sold and conveyed free from all judgment liens, if the right existed in the judgment creditor at once to attach all securities or garnishee all moneys arising from the sale. Consequently we must hold the intent of the law to be, to exempt the proceeds of the homestead, which the debtor *bona fide* intends to use and apply in obtaining another homestead. We do not say that the moneys arising from, or the securities given for, the consideration price of the homestead would be exempt if the debtor should use them in trade, or apply them in purchasing property not exempt by law. For this would virtually enlarge the exemption given by statute. But when a person sells his homestead with the intention of buying another with the proceeds, the exemption ought to extend to such proceeds, in order to carry out the policy of the law on the subject of homestead exemption. The following forcible remarks of the chief justice in *Jarvais v. Moe, supra,* are very apposite and instructive upon this point. He says: "The essential principle of the statute, corresponding with its letter, limits the exemption to one actual, continuous homestead. As a rule, our people live in homesteads which they own. One selling his homestead may well be presumed to do so, not for the purpose of abandoning, but for the purpose of changing his home, selling here to buy there; and the exemption is made to cover the change. And so the removal licensed is not removal from one homestead to another; not such removal as would be consistent with the gaining of another homestead; but such removal only as suspends the continuous possession without suspending the continuous home." (p. 447). This undoubtedly is the policy and spirit of the statute, to allow a person to sell one homestead and buy another; and the exemption must cover the change, and pro-

tect the proceeds while the transfer is being made. Otherwise the beneficent object of the law would often be defeated, and the owner would derive no possible benefit from the provision which enables him to sell and convey his homestead free from all judgment liens except those specified.

We have been referred to cases in Vermont, New Hampshire and Massachusetts, which held that the exemption does not extend to the proceeds of sales of exempt personal property, or to bounty moneys which had come to the possession of the volunteer, or to the hands of a third party for his benefit. We do not feel called upon to examine these cases in detail, as they afford little aid in arriving at the proper construction of our own statute. One remark may be made in respect to these decisions, namely, that the courts generally hold to quite a strict construction of the exemption law in question, whereas this court has uniformly said that our exemption statutes must be liberally construed. See *Weisbrod v. Daenicke*, 36 Wis., 73; *Krueger v. Pierce*, 37 id., 269, and *Jarvais v. Moe*.

*By the Court.* — The order of the circuit court is affirmed.