Johnson, J.
The Provision Company and the Commercial National Bank, claim to have acquired precedence by their actions commenced November 20, 1880, in which the stock of defendant, Charles E. Norton, was garnisheed by service of garnishee process on the Provision Company.
The plaintiffs in error' claim that as this stock was pledged prior to that time in the manner stated, Charles E. Norton had no such title or interest in the stock as could be attached by service of notice upon the corporation issuing the stock, and especially that the Provision Company could not garnishee itself; and, therefore, their service of garnishee process upon the pledgees of the stock in whose hands it was, with absolute power of sale on the 20th of January, 1881, gives to plaintiffs in error precedence.
In discussing this question, it must be borne in mind that *521 the stock in controversy had not been sold or transferred, but only pledged.
The blank form on the back of each certificate signed by Charles E. Norton would indicate that he had sold the stock, the words being: “ Hereby sell, transfer and assign,” but the fact is, that this form was used to carry out a contract of pledge.
It authorizes the pledgee to sell upon non-payment of the debt secured thereby.
The delivery of certificate thus assigned in blank, was an authority to the holder of the note secured to sell for the purpose of paying the debt. It was intended by the parties as security merely, and not as a transfer of the ownership in the stock.
A distinguishing element of the case at bar is, that the authority of pledgees to sell had not been exercised at the time of final judgment in this case.
The 11th clause of the agreed statement of fact shows that Stone and Colwell were authorized to sell the shares in their hands respectively, and after paying themselves the amounts for which the shares were pledged, to pay the surplus into bank to stand in place of the stock as the court shall finally determine, “ such sale to transfer title to the purchaser free of all claims by the parties to this proceeding who are thereafter to look to the fund so deposited in the place of the stock.”
Upon this state of fact who owned this stock within the meaning of the attachment law, or rather, had Charles E. Norton on the 20th of November, 1880, such an ownership or interest in this stock as was liable to attachment ? If so, was it seized by notice to the corporation as garnishee ?
At common law stock in a corporation was not subject to levy or attachment. The share of stock was neither a chattel nor a chose in action.
By Rev. Stat., sec. 5524, “ The lands, tenements, goods, chattels, stocks, or interest in stocks, rights, credits, money, and effects of the defendant . . . not exempt by law,” may be attached.
*522 Following the provisions as to service by taking the property attached or by service of the garnishee, is section 5547, as to answer of the garnishee, which provides that the garnishee “ shall answer, under oath, all questions put to him touching the property of every description, and credits, of the defendant, in his possession or under his control, and he shall disclose truly the amount owing by him to the defendant, whether due or not, and in the case of a corporation, any stock therein held by or for the benefit of the defendant, at or after the service of notice.”
It is now settled that a private corporation holds its corporate property in trust for the benefit of its stockholders; that by force of the statute relating to attachments, such stock of a debtor may be taken by notice of garnishment duly served on the corporation, and that the equitable interest of the debtor may be seized by such notice. The National Bank of New London v. L. S. & M. S. R. Co., 21 Ohio St., 221.
The exhaustive discussion of the provisions of our statute found in that case, leaves nothing to be said upon this point.
There the stock was transferred to a third person who claimed to be the owner who had acquired the legal title by transfer upon the books of the corporation. It was charged and proved by the attaching creditors, that such transfer was in fraud of defendant’s creditors.
The court says that the defendant was the equitable owner of the stock, and his interest therein was held by the company in trust for him, which was subject to garnishment.
In the case at bar, the legal title to the stock was in Charles E. Norton, no sale or transfer having ever been .made upon the books of the company. Norton was entitled to vote this stock, and to receive dividends thereon, and was the owner thereof, subject to the payment of the debt to the pledgees. The pledgees were not stockholders, nor individually liable as such, nor as between them in the *523 corporation were they members. Henkle v. Salem Man. Co., 39 Ohio St. 547.
They had the option to perfect their security by having the same transferred to them upon the books of the company. This would have invested them with the legal title, but still as between them and the pledgor, he was the real owner until the power of sale had been exercised by the pledgees, and his interest which was subject to attachment was the value of the stock subject to the payment of the debt for which it was pledged.
Under the authority vested in the pledgees, they could have sold and transferred to a bona fide purchaser the absolute ownership and legal title.
Neither the attachment of November the 20th, by the Provision Company, nor that of January the 20th, by plaintiffs, could defeat the right of these pledgees.
They could have invested their vendees with the absolute ownership of the stock.
Such is the doctrine of Smyth v. Anderson, 31 Ohio St. 144, wherein it was held: “ The levy of an attachment, in an action against a divisee, will not defeat or prevent the execution of a power of sale, given by the testator to his executor, nor will such levy effect the title of a purchaser at the executor’s sale.”
As the power of sale vested in the pledgees was never exercised, and as it was agreed in this case that their interest in the pledge should be first paid, the question before us is, who is entitled to the surplus ?
Aside from any rights acquired by legal attachment, Chas. E. Norton was entitled to .the surplus. Whelan v. Kinsley, 26 Ohio St. 131; Henkle v. Salem Man. Co., 39 Ohio St. 547; Carty v. Fenstemaker, 14 Ohio St. 457. In this last case, which was that of a mortgagee of chattel property, the surplus was subject to attachment.
It was there said if the mortgagee gets possession by consent (in which case it is identical with a pledge), the right of the mortgagor to redeem or to the surplus is beyond dispute.
*524 It is claimed, however, that as each certificate of stock had upon its back a blank bill of sale, with a blank power of attorney to transfer upon the books of the company, this was an absolute transfer of ownership of the stock to the pledgees not subject to attachment by service of garnishee process upon the corporation, and, therefore, the Provision Company and the bank acquired no preference by their attachment.
In support of this view, McNeil v. The Tenth National Bank, 46 N. Y. 325, is relied on. That caséis in authority simply for the doctrine that: “ "Where the owner of property confers upon another, an appai’ent title to, or power of disposition over it, he is estopped from asserting his title as against an innocent third party who has dealt with the apparent owner in reference thereto, without knowledge of the claims of the true owner. The rights of such third party do not depend upon the actual title or authority of the one with whom he dealt, but upon the act of the owner, which precludes him from disputing the title or authority he has apparently conferred.”
All that was held in that case was, that the owner of the stock by conferring upon a stock-broker complete authority to sell and transfer the certificate by indorsing thereon the form of assignment for value received, and an irrevocable power to make all necessary transfer, clothed the broker with apparent ownership which he could transfer to an innocent third pesson, so as to estop the transferrer from questioning the title of an innocent purchaser.
Had these pledgees exercised the power of sale conferred upon them aud sold the stock to such an innocent purchaser, it might be questioned whether service of process upon the corporation would have been effectual to create a lien in favor of the Provision Company. As that power never was exercised, and as these pledgees at the time of the attachments held the stock as an ordinary pledge, subject to attachment as decided in New London Bank v. L. S. & M. S. R. Co., supra, their attachment has precedence over that of plaintiffs’. At most, defendant’s attachment *525 was subject to be defeated by the exercise of the power of sale to an innocent purchaser.
In Secor v. Witter, 39 Ohio St. 218, this court held that the payee of a negotiable note is subject to garnishment, and as against him and those claiming through him, with actual notice of the proceedings in attachment, the right of the plaintiff in attachment is paramount, but such right is liable to be defeated by one who becomes a bona fide purchaser before due of the negotiable instrument.
See also Kieffer v. Ehler, 18 Pa. St. 388; Day v. Zimmerman, 68 Pa. St. 72.
If we concede, therefore, that the power vested in the pledgees would have enabled them by sale and transfer to an innocent purchaser to have defeated the attachment of November 20th, yet, as it was not exercised, the lien of the attachment of that date has precedence.
2. Another question is made, that is, can a plaintiff in attachment garnishee himself? This is a question of statutory construction. By Revised Statutes, section 5530, any person or corporation is liable as garnishee upon due service of such.
This is.broad enough to include the plaintiff, whether a person or corporation.
No good reason can be assigned why an attaching creditor may not reach money or credits in his own hands by garnishee process, as well as any other creditor.
That he may do so is decided .in the following cases : Lyman v. Wood, 42 Vt. 113; Coble v. Nonemaker, 78 Pa. St. 501; see also Drake Att., sec. 543. The same doctrine is supported by numerous authorities cited in Drake.
The dividends made and not paid follow the stock, and are subject to like distribution.

Judgment affirmea.